UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America

    Plaintiff,

v.

                                            Case No. 22-20005
                                            Hon. Denise Page Hood

Antonio Capozzoli,

    Defendant.
_____/

## ORDER DENYING MOTION TO WITHDRAW GUILTY PLEA AND TO DISMISS [ECF No. 39]

**I.    Introduction**

Defendant Antonio Capozzoli is charged with Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). Defendant pleaded guilty to that charge, without the benefit of a Rule 11 plea agreement, on September 27, 2022. He was scheduled for sentencing on January 26, 2023, but he requested an adjournment in order to file a motion in light of the United States Supreme Court's decision in *New York State Rifle and Pistol Assoc. v. Bruen*, 142 S.Ct. 2111 (June 23, 2022). Defendant subsequently filed a Motion to Revoke Guilty Plea and Dismiss the Indictment. [ECF No. 39] The Motion is fully briefed, and a hearing is scheduled to be held on April 26, 2023. For the following reasons, the Motion is **denied** in its entirety.

1

## II.     Analysis

### A. Motion to Withdraw Guilty Plea

The test for validity of a guilty plea is whether the plea was entered voluntarily and intelligently. *Railey v. Webb,* 540 F.3d 393, 417 (6th Cir. 2008); *Hill v. Lockhart,* 474 U.S. 52, 56 (1985). If followed, Rule 11 discourages attacks on the validity of a guilty plea. *Id.* A defendant must show a "fair and just" reason in order to withdraw an accepted plea of guilty. Fed. R. Crim. P. 11(d)(2)(B). The goal of this rule "is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991). The defendant has the burden of proving that withdrawal is justified. *Id.* at 1003. Granting withdrawal is within the discretion of the district court. *Id.*

The Sixth Circuit has set forth seven factors that this Court must consider in determining whether the defendant has demonstrated a "fair and just reason" for seeking withdrawal of his guilty plea. *See, e.g., United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994) (*superseded in part by statute, as stated in United States v. Caseslorente,* 220 F.3d 727, 734 (6th Cir. 2000)). The factors include:

(1) the amount of time that elapsed between the plea and the motion to withdraw;

(2) the presence (or absence) of a valid reason for failure to move for withdrawal earlier in the proceedings;

(3) whether the defendant has asserted or maintained his innocence;

(4) the circumstances underlying the entry of the guilty plea;

(5) the defendant's nature and background;

(6) the degree to which the defendant has had prior experience with the criminal justice system; and

(7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* at 1181. *See also United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008). The factors are a general, non-exhaustive list; no one factor is controlling, nor are the factors intended to be scored by some fixed formula. *Id.; United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996); *United States v. York*, 405 F.App'x 943, 948 (6th Cir. 2011); *United States v. Mitchell*, 2013 WL 2635192, at *2 (E.D. Mich. June 12, 2013).

Defendant's request to withdraw his guilty plea is premised solely upon the belief that the felon in possession of a firearm charge should be dismissed pursuant to *Bruen*. Defendant submits no other theory, nor does he offer any argument about, why: (a) his guilty plea was not entered into voluntarily and intelligently; or (b) he should be permitted to withdraw his guilty plea. As discussed below, however, the application of *Bruen* to the instant case does not support dismissal of the felon in possession of a firearm charge.

3

Defendant's request to withdraw his guilty plea also is untimely. *Bruen* was decided more than three months before he entered his guilty plea (and more than six months before he raised the issue in anticipation of his January 2023 sentencing date). Defendant's reliance on *United States v. Hicks*, 2023 WL 164170 (W.D. Tex. Jan. 9, 2023), is misplaced, as Mr. Hicks pleaded guilty to a charge pursuant to 18 U.S.C. §922(n) approximately four months <u>before</u> *Bruen* was decided. For that reason, Mr. Hicks' *Bruen* challenge was not untimely.

Accordingly, the Court denies Defendant's request to withdraw his guilty plea since he failed to carry his burden under the factors noted above. Even though the Court finds Defendant is not allowed to withdraw his guilty plea, his argument as to *Bruen* is addressed below.

**B. Motion to Dismiss the Indictment**

The Second Amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Defendant argues that the felon in possession of a firearm charge under 18 U.S.C. § 922(g)(1) should be dismissed in light of *Bruen*. Defendant contends that,

> [B]ecause possession of a firearm comes within the Second Amendment's "plain text," [his] conduct [is] presumptively protected. The government will be unable to rebut that presumption.

4

ECF No. 39, PageID.272. Defendant argues that *Heller* did not limit the Second Amendment right to law-abiding, responsible citizens; rather, that was only a floor, not a ceiling because "at the very least, such people are protected by the Second Amendment." *Id.* at PageID.279.

Defendant's argument is based on several premises. First, Defendant contends that he retains his constitutional rights under the Second Amendment despite his felony convictions because he is part of "the people" protected by the Second Amendment. Citing *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022) (recognizing that even "dangerous felons" are "indisputably part of the people"). Defendant states that the "plain text" of the Second Amendment does not exclude felons from its protection, any more than felons are excluded from the protections of the other provisions of the Bill of Rights. Defendant asserts that interpreting "the people" differently under the Second Amendment would "subject [the Second Amendment] to an entirely different body of rules than other Bill of Rights guarantees," which the Supreme Court has forbidden. Citing *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010); *Jimenez-Shilon*, 34 4th at 1046.

Defendant next argues that the Government cannot demonstrate that 18 U.S.C. § 922(g)(1) "is consistent with the Nation's historical tradition of firearm regulation." Citing *Bruen*, 142 S.Ct. at 2130. Defendant states that the *Bruen* court found that the "Second Amendment guaranteed to 'all Americans' the right to bear

5

commonly used arms in public subject to certain reasonable, well-defined restrictions." ECF No. 42, PageID.326 (citing *Bruen*, 142 S.Ct. at 2156). Defendant asserts that felon-disarmament laws, which did not appear in the United States until the 20th century,[1] did not exist in the generation that ratified the Second Amendment, even though the problem of felons in possession of firearms was well-known to the Founding Fathers. Defendant contends that this lack "of a comparable tradition of regulation" in the founding area means § 922(g)(1) is unconstitutional.

---

[1] Defendant argues:

> Section 922(g)(1) traces its origins to 1938, when Congress passed the Federal Firearms Act, prohibiting certain felons from receiving firearms. *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (citing c. 850, § 2(f), 52 Stat. 1250, 1251 (1938)). At that time, the statute "covered only a few violent offenses," id., prohibiting firearm possession by those convicted of crimes such as murder, rape, kidnapping, and burglary. *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011). It was not until 1961 that Congress amended the statute to prohibit "possession by all felons." *Skoien*, 614 F.3d at 640 (emphasis in original) (citing Pub. L. 87–342, 75 Stat. 757). Seven years later, "Congress changed the 'receipt' element of the 1938 law to 'possession,' giving 18 U.S.C. § 922(g)(1) its current form." *Id*. Thus § 922(g)(1) "is firmly rooted in the twentieth century," *Booker*, 644 F.3d at 24—a century and a half after adoption of the Second Amendment. Regulations of such recent vintage cannot establish a historical tradition unless they "confirm[]" earlier practice. *Bruen*, 142 S. Ct. at 2137. Indeed, *Bruen* refused to even "address any of the 20th-century historical evidence brought to bear by respondents or their amici," since such evidence "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id*. at 2154 n.28.

ECF No. 39, PageID.283.

Upon a thorough review and consideration of *Bruen*, the Court is not persuaded that *Bruen* supports Defendant's arguments. From the opening paragraph of the *Bruen* opinion, the majority makes clear that the issue before the court was the right of "law-abiding citizens" to carry handguns for self-defense. The opinion begins:

> In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and *McDonald v. Chicago*, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), we recognized that the Second and Fourteenth Amendments protect the right of an **ordinary, law-abiding citizen** to possess a handgun in the home for self-defense. In this case, petitioners and respondents agree that **ordinary, law-abiding citizens** have a similar right to carry handguns publicly for their self-defense. We too agree, and now hold, consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

*Bruen*, 142 S. Ct. at 2122 (emphasis added). The majority subsequently stated that the Second Amendment focuses on the rights of "law-abiding" citizens:

> The Second Amendment "is the very *product* of an interest balancing by the people" and it "surely elevates above all other interests **the right of law-abiding, responsible citizens to use arms**" for self-defense. *Heller*, 554 U.S. at 635, 128 S.Ct. 2783.

*Bruen*, 142 S. Ct. at 2131 (emphasis added).

The Court finds that the *Bruen* court's interpretation and application of the Second Amendment was limited to the plaintiffs before the court in that case, and

7

that "the people" in that case, as specifically identified by the *Bruen* majority, were "law-abiding" citizens:

> It is undisputed that petitioners Koch and Nash—**two ordinary, law-abiding, adult citizens**—are part of "the people" whom the Second Amendment protects. *See Heller*, 554 U.S. at 580, 128 S.Ct. 2783.

*Bruen*, 142 S. Ct. at 2134 (emphasis added).

> None of these historical limitations on the right to bear arms approach New York's proper-cause requirement because none operated to prevent **law-abiding citizens** with ordinary self-defense needs from carrying arms in public for that purpose.

*Id.* at 2150 (emphasis added); *see also id.* at 2138 & n.9; *United States v. Nevens*, 2022 WL 17492196, at *2 (C.D. Cal., Aug. 15, 2022). The *Bruen* majority's holding likewise specifies that the case centers on law-abiding citizens:

> New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents **law-abiding citizens** with ordinary self-defense needs from exercising their right to keep and bear arms. We therefore reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*Id.* at 2156 (emphasis added).

The concurrences by Justice Alito and Justice Kavanaugh further clarify that *Bruen* is limited to "law-abiding citizens," *id.* at 2157, 2161, but the concurrences also make it clear that the *Bruen* decision does not: (1) impact the holdings in *Heller* or *McDonald*; and (2) prohibit governmental regulation of possession of firearms by

8

felons nor extend the rights of felons to possess firearms. As set forth in their concurrences:

> The Court's exhaustive historical survey establishes that point very clearly, and **today's decision therefore holds that a State may not enforce a law, like New York's Sullivan Law, that effectively prevents its <u>law-abiding</u> residents from carrying a gun for this purpose**.
>
> **<u>That is all we decide</u>**. **<u>Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun</u>**. Nor does it decide anything about the kinds of weapons that people may possess. **<u>Nor have we disturbed anything that we said in *Heller* or *McDonald v. Chicago*, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), about restrictions that may be imposed on the possession or carrying of guns</u>**.

*Bruen*, 142 S. Ct. at 2157 (Alito, J. concurring) (emphasis added).

> I join the Court's opinion, and I write separately to underscore two important points about the limits of the Court's decision.
>
> * * * * *
>
> *Second*, as *Heller* and *McDonald* established and the Court today again explains, the Second Amendment "is neither a regulatory straightjacket nor a regulatory blank check." *Ante*, at 2133. **<u>Properly interpreted, the Second Amendment allows a "variety" of gun regulations</u>**. *Heller*, 554 U.S. at 636, 128 S.Ct. 2783. As Justice Scalia wrote in his opinion for the Court in *Heller*, and Justice ALITO reiterated in relevant part in the principal opinion in *McDonald*:
>
> > "Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry

>any weapon whatsoever in any manner whatsoever and for whatever purpose.... **[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons** and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. [Footnote 26: We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive.]
>
>"We also recognize another important limitation on the right to keep and carry arms. *Miller* said, as we have explained, that the sorts of weapons protected were those in common use at the time. We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Heller*, 554 U.S. at 626−627, and n. 26, 128 S.Ct. 2783 (citations and quotation marks omitted); see also *McDonald*, 561 U.S. at 786, 130 S.Ct. 3020 (plurality opinion).

*Bruen*, 142 S. Ct. at 2161–62 (Kavanaugh, J., joined by Roberts, C.J. concurring,) (emphasis added).

The *Bruen* court stated that *Heller* "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 142 S.Ct. at 2122. The *Bruen* court further recognized that *Heller* held that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms' for self-defense," *Id.* at 2131. The *Heller* court did so even after conducting an historical analysis and finding that the Second Amendment presumably applies to "all Americans." *Heller*, 554 U.S. at 579-

10

81. Nonetheless, the *Heller* court concluded that the exact interest protected by the Second Amendment's text was "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635; 644 (Stevens, J., joined by Souter, Ginsburg, and Breyer, J.J., dissenting) (explaining how the *Heller* majority "limits the protected class" in multiple ways). And, despite Defendant's reliance on *Jiminez-Shilon*, the Court notes that court recognized that certain classes of persons could be prohibited from possessing firearms, even if they fall within the definition of "the people:"

> Accordingly, as the Supreme Court put it in *Heller*, certain groups of people—even those who might be among "the people"—may be "disqualified from" possessing arms without violating the Second Amendment. Based on our "examination of a variety of legal and other sources" from the Founding era [citing *Heller*,] we hold that illegal aliens are one such group.

*Id.* At 34 4th 1044. (internal citations omitted).

Finally, the *Bruen* court stated that the historical inquiry should consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S.Ct. at 2133; *id.* at 2131 ("The Second Amendment 'is the very *product* of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense.").[2]

---

[2] The Court need not undertake (and I have not conducted) an historical analysis of the right of felons to bear arms in the context of the nation's historical tradition of firearm regulation.

Based on the language of *Bruen*, the Court concludes that *Bruen* itself: (a) does not extend beyond "law-abiding citizens;" or (b) permit the possession of firearms by felons. Unless the Supreme Court (or the Sixth Circuit) expressly holds that felons have the right to possess firearms pursuant to the Second Amendment, this Court declines to adopt the rationale or conclusion advocated by Defendant.

Courts nationwide have likewise concluded that *Bruen*'s scope is limited to "ordinary, law abiding citizens" and does not extend to felons.[3] *See, e.g., United States v. Avila*, --- F.4th ---, 2022 WL17832287, at *2 (5th Cir., Dec. 21, 2022) ("there is no binding precedent holding § 922(n) unconstitutional"); *United States v. Perez-Garcia*, 2022 WL 4351967, at *7 (S.D. Cal. Sept. 18, 2022) ("the Nation's historical tradition supports such targeted regulations" as § 922(n)); *United States v. Kays*, 2022 WL 3718519, at *5 (W.D. Okla. Aug. 29, 2022) (finding that there are "proper historical analogues for § 922(n)"); *United States v. Charles*, 2022 WL 4913900, at **11-12 (in rejecting defendant's motion to dismiss pursuant to *Bruen*, the court found that "there is a historical basis for excluding felons from constitutional rights," including under *Heller*, such that "logic demands that society could also exclude [felons] under the Second Amendment"); *Nevens*, 2022 WL

---

[3] The Government represents that, since *Bruen* was issued, over 100 federal district courts have held that, "based on text, history, precedent, or a combination of the three—18 U.S.C. § 922(g)(1) remains constitutional." *See* ECF No. 41, PageID.291 and Appendix A.

17492196, at *2 (rejecting defendant's argument that the Second Amendment does not draw a "felon/non-felon distinction" and extends to "all people," finding that "[d]efendant cannot point to any Supreme Court authority holding that the Second Amendment protects felons' right to use firearms in the course of criminal activity").

As the *Nevens* court recognized, the *Bruen* court does not mention that felons would come within "the people" that the Second Amendment protects, nor has the Supreme Court ever recognized the right of felons to use firearms in the course of criminal activity. *Nevens*, 2022 WL 17492196, at *2. The Court finds that Defendant is unable to cite any authority to support his theory that the right of a felon to possess a firearm comes within the Second Amendment's "plain text," such that his possession of the firearms is presumptively or conclusively protected. Accordingly, Defendant's Motion to Dismiss Indictment is denied.

### III. Conclusion

For the reasons stated above, the Court denies Defendant's Motion to Revoke Guilty Plea and Dismiss the Indictment [ECF No. 39] in its entirety.

S/DENISE PAGE HOOD  
DENISE PAGE HOOD  
United States District Judge

DATED: October 26, 2023